UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA

|  |  |  |
|---|---|---|
| WENDY SNYDER, | : | |
| Plaintiff, | : | Civil No. 3:16-CV-01689 |
| v. | : | (Judge Brann) |
| CAROLYN W. COLVIN,<br>Acting Commissioner of<br>Social Security | : | |
| Defendant. | : | |

**MEMORANDUM**

March 22, 2017

The above-captioned action is one seeking review of a decision of the Acting Commissioner of Social Security ("Commissioner")[1], denying Plaintiff Wendy Snyder's (Snyder") application for Supplemental Security Income ("SSI") under Title XVI.  For the reasons set forth below, the Court will vacate and remand the Commissioner's denial of SSI.

**I.  BACKGROUND**

SSI is a federal income supplement program funded by general tax revenues (not social security taxes).  It is designed to help aged, blind or other disabled individuals who have little or no income.  Insured status is irrelevant in determining a claimant's eligibility for supplemental security income benefits.

---

[1] Nancy A. Berryhill is now the Acting Commissioner of Social Security.  Pursuant to Federal Rule of Civil Procedure 25(d), Nancy A. Berryhill is substituted for Carolyn W. Colvin, Acting Commissioner of Social Security as the defendant in this suit.

Snyder applied protectively for SSI on November 7, 2012, alleging disability beginning January 1, 2010. (Tr. 102).[2] She later amended the alleged onset date to December 19, 2012. (Id.). Her claim was initially denied on May 10, 2013. (Tr. 102, 181-85). Snyder requested a hearing before the Administrative Law Judge ("ALJ") Office of Disability and Adjudication and Review of the Social Security Administration, and one was held on October 9, 2014. (Tr.102). At the hearing, Snyder was represented by counsel, and a vocational expert testified. (Tr. 120-39). On October 20, 2014, the ALJ issued a decision denying Snyder's application. (Tr. 102-11). Snyder's subsequent request for review with the Appeals Council was denied. (Tr. 1-8). Thus, the ALJ's decision stood as the final decision of the Commissioner.

Snyder filed a complaint in this Court on August 12, 2016. (Doc. 1). The Commissioner filed an answer on October 13, 2016. (Doc. 8). After supporting and opposing briefs were submitted (Docs. 10 -12), the appeal[3] became ripe for disposition.

Snyder was born on July 9, 1979, has a limited education, and is able to communicate in English. (Tr. 109). She has not engaged in substantial gainful activity since the alleged amended onset date of December 19, 2012. (Tr. 104). Snyder has the following severe impairments: panic disorder, multiple sclerosis, tremor and obesity. (Id.).

## II. STANDARD OF REVIEW

When considering a social security appeal, the Court has plenary review of all legal issues decided by the Commissioner. See Poulos v. Comm'r of Soc. Sec., 474 F.3d 88, 91 (3d

---

[2] References to "Tr. __" are to pages of the administrative record filed by the Defendant as part of the Answer (Docs. 8 and 9) on October 13, 2016.

[3] Under the Local Rules of Court, "[a] civil action brought to review a decision of the Social Security Administration denying a claim for social security disability benefits" is "adjudicated as an appeal." M.D. Pa. Local Rule 83.40.1.

Cir. 2007); Johnson v. Comm'r of Soc. Sec., 529 F.3d 198, 200 (3d Cir. 2008). However, my review of the Commissioner's findings of fact pursuant to 42 U.S.C. § 405(g) is to determine whether those findings are supported by "substantial evidence." Id. The factual findings of the Commissioner, "if supported by substantial evidence, shall be conclusive . . . ." 42 U.S.C. § 405(g). "Substantial evidence does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Johnson, 529 F.3d at 200 (3d Cir. 2008) (quoting Hartranft v. Apfel, 181 F.3d 358, 360 (3d Cir. 1999)) (internal quotations and citations omitted). Substantial evidence has been described as more than a mere scintilla of evidence but less than a preponderance. Brown v. Bowen, 845 F.2d 1211, 1213 (3d Cir. 1988). "It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Plummer v. Apfel, 186 F.3d 422, 427 (3d Cir. 1999) (citing Ventura v. Shalala, 55 F.3d 900, 901 (3d Cir. 1995)) (quoting Richardson v. Perales, 402 U.S. 389, 401 (1971) (internal citations omitted)). The United States Court of Appeals for the Third Circuit has stated,

> [O]ur decisions make clear that determination of the existence *vel non* of substantial evidence is not merely a quantitative exercise. A single piece of evidence will not satisfy the substantiality test if the [Commissioner] ignores, or fails to resolve, a conflict created by countervailing evidence. Nor is evidence substantial if it is overwhelmed by other evidence – particularly certain types of evidence (e.g., that offered by treating physicians) – or if it really constitutes not evidence but mere conclusion.

Morales v. Apfel, 225 F.3d 310, 317 (3d Cir. 2000) (citing Kent v. Schweiker, 710 F.2d 110, 114 (3d Cir. 1983); Gilliland v. Heckler, 786 F.2d 178, 183 (3d Cir. 1986)). Therefore, a court reviewing the decision of the Commissioner must scrutinize the record as a whole. Id. (citing Smith v. Califano, 637 F.2d 968, 970 (3d Cir. 1981)).

**III. SEQUENTIAL EVALUATION PROCESS**

The plaintiff must establish that there is some "medically determinable basis for an impairment that prevents him from engaging in any substantial gainful activity for a statutory twelve-month period." Fargnoli v. Massanari, 247 F.3d 34, 38-39 (3d Cir. 2001) (quoting Plummer, 186 F.3d at 427) (internal quotations omitted). "A claimant is considered unable to engage in any substantial gainful activity 'only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy . . . .'" Fargnoli, 247 F.3d at 39 (quoting 42 U.S.C. § 423(d)(2)(A)). The Commissioner follows a five-step inquiry pursuant to 20 C.F.R. § 404.1520 to determine whether the claimant is disabled. In Plummer, the Third Circuit set out the five-steps:

> In step one, the Commissioner must determine whether the claimant is currently engaging in substantial gainful activity. 20 C.F.R. § [404.]1520(a). If a claimant is found to be engaged in substantial activity, the disability claim will be denied. Bowen v. Yuckert, 482 U.S. 137, 140 (1987) . . . . In step two, the Commissioner must determine whether the claimant is suffering from a severe impairment. 20 C.F.R. § 404.1520(c). If the claimant fails to show that her impairments are "severe," she is ineligible for disability benefits.
>
> In step three, the Commissioner compares the medical evidence of the claimant's impairment to a list of impairments presumed severe enough to preclude any gainful work. 20 C.F.R. § 404.1520(d). If a claimant does not suffer from a listed impairment or its equivalent, the analysis proceeds to steps four and five. Step four requires the ALJ to consider whether the claimant retains the residual functional capacity to perform her past relevant work. 20 C.F.R. § 404.1520(d). The claimant bears the burden of demonstrating an inability to return to her past relevant work. Adorno v. Shalala, 40 F.3d 43, 46 (3d Cir. 1994).
>
> If the claimant is unable to resume her former occupation, the evaluation moves to the final step. At this stage, the burden of production shifts to the Commissioner, who must demonstrate the claimant is capable of performing other available work

> in order to deny a claim of disability. 20 C.F.R. § 404.1520(f). The ALJ must show there are other jobs existing in significant numbers in the national economy which the claimant can perform, consistent with her medical impairments, age, education, past work experience, and residual functional capacity. The ALJ must analyze the cumulative effect of all the claimant's impairments in determining whether she is capable of performing work and is not disabled. See 20 C.F.R. § 404.1523. The ALJ will often seek the assistance of a vocational expert at this fifth step. See, [sic] Podedworny v. Harris, 745 F.2d 210, 218 (3d Cir. 1984).

Plummer, 186 F.3d at 428.

## IV. DISCUSSION

Snyder appeals the ALJ's determination on three grounds: (1) substantial evidence does not support the ALJ's residual functional capacity ("RFC") finding; (2) the ALJ did not properly weigh the medical opinion evidence; and (3) substantial evidence does not support the ALJ's credibility assessment.

The ALJ went through each step of the sequential evaluation process and (1) found that Snyder had not engaged in substantial gainful activity since December 19, 2012, the alleged amended onset date; (2) found that Snyder had the severe impairments of panic disorder, multiple sclerosis, tremor and obesity; (3) found that Snyder's impairments did not meet or equal a listed impairment; and (4) concluded that while Snyder does not have past relevant work, she could perform light work with several limitations. (Tr. 102-11). Specifically, in addressing Snyder's RFC, the ALJ found that:

> [she could only occasionally] climb stairs, balanc[e], stoop[], kneel[], crouch[], and crawl[] ... [she] needs to avoid concentrated exposure to hazards as well as climbing ladders and frequent fine manipulation ... [she] retains the mental capacity for simple, routine, repetitive tasks in a work environment free form fast-paced production involving only simple work-related decision with few, if any, work place changes, and no interaction with the public.

(Tr. 106).

The Court will initially address Snyder's first and second arguments together because they are interrelated. The ALJ must consider all of the relevant evidence and give a clear explanation to support his findings when determining the RFC. Fargnoli, 247 F.3d at 40, 41 (quoting Burnett v. Comm'r of Soc. Sec. Admin., 220 F.3d 112, 121 (3d Cir. 2000)). A treating physician's opinion is entitled to controlling weight when it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the claimant's] case record . . . ." Johnson, 529 F.3d at 202 (quoting Fargnoli, 247 F.3d at 43 (quoting 20 C.F.R. § 404.1527(d)(2))) (internal quotations omitted). If a treating physician's opinion conflicts with an opinion of a non-treating physician, the ALJ may reject the treating physician's opinion " 'only on the basis of contradictory medical evidence' and not due to his or her own credibility judgments, speculation or lay opinion." Id. (quoting Plummer, 186 F.3d at 429). The ALJ determines what weight to give a medical opinion by considering factors such as the examining relationship, the length of the treatment relationship and frequency of visits, nature and extent of the treatment relationship, whether the medical source supports the opinion with medical evidence, whether the opinion is consistent with the record as a whole, and the medical source's specialization. 20 C.F.R. § 404.1527(c)(1-5). If the ALJ discounts certain evidence, he must give some indication of the reasons for discounting that evidence. Fargnoli, 247 F.3d at 43.

The record in this case contains three medical opinions, the first from Mahmood Nasir, M.D. who performed a consultative exam on April 15, 2013 (Tr. 452-60); the second from a psychological consultative examination with Michael Keil, Ph.D. on April 29, 2013 (Tr. 462-72); and finally one from Snyder's family practitioner, David Wampler, M.D. on September 15,

2014 (Tr. 562-67). In his decision, the ALJ accorded little weight to the opinion of Dr. Nasir, partial weight to Dr. Keil's opinion, and limited weight to Dr. Wampler's opinion. (Tr. 108-09). The significance of this weighing of the medical opinions is that the ALJ made a determination of Snyder's RFC without relying on the medical opinions of any of the medical doctors who provided a medical opinion.

Specifically, Dr. Nasir assessed Snyder capable of lifting and carrying up to 10 pounds occasionally, able to sit, stand and walk no more than one hour each in an 8 hour workday, occasional reaching, handling, fingering, feeling, pushing/pulling, climbing stairs, stooping, kneeling, crouching and crawling, and no climbing ladders/scaffolds and balancing. (Tr. 108, 455-60). Dr. Nasir also opined that Snyder should avoid exposure to unprotected heights, moving mechanical parts, extreme cold and heat, and capable of no more than occasionally operating a motor vehicle, and occasional exposure to humidity and wetness, dust, odors, fumes, pulmonary irritants, and vibrations. (Tr. 108, 459). Dr. Nasir also noted that "[a]ctivities result in pain in head, neck, back and also has numbness in hand." (Tr. 108, 460).

Limited weight was accorded to this medical opinion by the ALJ because he found that the restrictions were overstated in comparison to the limited examination findings and treatment required by Snyder, including her treating neurologist. (Tr. 109). Additionally, the ALJ reasoned that Dr. Nasir appeared to rely on Snyder's complaints rather than his examination findings in making the above restrictions. (Id.).

Next, the ALJ gave partial weight to the opinion of Dr. Keil. (Tr. 109). Dr. Keil opined that Snyder had mild and moderate restrictions in performing work-related tasks, and rated her with a global assessment of functioning ("GAF") of 40-50. (Tr. 109, 465). Dr. Keil further

opined that Snyder "would be expected to be present variably and produce interference in most work settings in the context of her multiple sclerosis, as is found with most individuals with diagnosis of MS. Her panic disorder alone would be expected to produce significant interference with instrumental activities, including vocational activities ...." (Tr. 465). In assigning this opinion only partial weight, the ALJ reasoned that the GAF score is not supported by the mental status examination findings, the claimant's limited need for mental health treatment and the claimant's admission that she tries to keep busy most of the time. (Tr. 109).

Finally, the ALJ accorded limited weight to Dr. Wampler, Snyder's family practitioner. Dr. Wampler opined that Snyder was incapable of even "low stress" jobs, expected to be absent from work more than four days per month, was unable to stand/walk or sit longer than 2 hours each in an 8 hour workday, and has significant and persistent disorganization of motor function in two extremities and significant reproducible fatigue with muscle weakness on repetitive activity. (Tr. 109, 564-67). Moreover, Dr. Wampler opined that Snyder was capable of lifting and carrying less than 10 pounds occasionally, and never lifting or carrying 10 pounds or greater. (Tr. 566).

In assigning limited weight to this opinion, the ALJ stated that Dr. Wampler's treatment and examination notes do not support his conclusions and restrictions and that Dr. Wampler's conclusions are "clearly overstated." (Tr. 109). The ALJ reasoned that Snyder was treated conservatively, that she declined referral to physical therapy, reported exercising regularly, presented with appropriate musculoskeletal range of motion and strengths, had normal station and gait, and normal judgment and orientation. (Tr. 109). The ALJ provides that the above frequency and degree of treatment is not what "one would expect from an individual with the

alleged symptoms reported...." (Tr. 108).

I find that substantial evidence does not support the ALJ's ultimate determination. The ALJ's decision to discredit, at least partially, every opinion of every medical doctor's RFC assessment of Snyder left the ALJ without a single medical opinion to rely upon in reaching a RFC determination. "Rarely can a decision be made regarding a claimant's residual functional capacity without an assessment from a physician regarding the functional abilities of the claimant." Maellaro v. Colvin, Civ. No. 3:12-01560, 2014 WL 2770717, at *11 (M.D. Pa. June 18, 2014); see Doak v. Heckler, 790 F.2d 26, 29 (3d Cir. 1986) ("No physician suggested that the activity [the claimant] could perform was consistent with the definition of light work set forth in the regulations, and therefore the ALJ's conclusion that he could is not supported by substantial evidence."). Moreover, an ALJ cannot disregard medical opinion "based solely on his own amorphous impressions, gleaned from the record and from his evaluation of [the claimant]'s credibility." Burns v. Colvin, 156 F. Supp. 3d 579, 595 (M.D. Pa. Jan. 13, 2016) (quoting Morales v. Apfel, 225 F.3d 310, 317 (3d Cir. 2000)). An "ALJ may not reject a supported medical opinion based on the ALJ's lay evaluation of medical evidence." Burns, 156 F. Supp. 3d at 595.

Here, not one medical opinion proffers that Snyder is capable of light work's physical exertion requirements. 20 C.F.R. § 404.1567(b) states that light work "involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds." Dr. Nasir assessed Snyder capable of lifting and carrying up to 10 pounds occasionally while Dr. Wampler similarly opined Snyder's limitation to be less than 10 pounds occasionally. (Tr. 455, 566). No doctor opined that Snyder is capable of lifting up to 20 pounds at a time or frequently

lifting or carrying weight up to 10 pounds. Similarly, both Dr. Nasir and Dr. Wampler opined that Snyder is unable to stand/walk more than 1 or 2 hours, respectively, in an 8 hour work day. (Tr. 456, 565). The ALJ failed to point to any specific medical evidence that would support a contrary opinion on Snyder's standing/walking capabilities, and as a result, it appears that the ALJ was forced to reach a RFC determination without the benefit of any medical opinion. Accordingly, the ALJ's conclusion is not supported by substantial evidence.

I also find that the ALJ impermissibly engaged in a lay interpretation of the medical evidence in stating that the frequency and degree of Snyder's treatment is not what "one would expect from an individual with the alleged symptoms reported ..." despite the contrary medical opinions offered by Doctors Nasir, Keil, and Wampler. As suggested by Plaintiff, if the ALJ believed that all of the medical opinions were inadequate or inconsistent, rather than engage in his own lay analysis, the ALJ should have requested a clarification as to the limitations opined by the medical doctors, rather than engaging in speculation or stating his own lay opinion of the medical evidence. See Mayes v. Massanari, 276 F.3d 453, 459-60 (9th Cir. 2001) (stating that the ALJ's obligation to develop the record is triggered "when there is ambiguous evidence or when the record is inadequate to allow for proper evaluation of the evidence."); Burns v. Colvin, 156 F. Supp. 3d 579, 595 (M.D. Pa. Jan. 13, 2016) (An ALJ cannot disregard medical opinion "based solely on his own amorphous impressions, gleaned from the record and from his evaluation of [the claimant]'s credibility") (quoting Morales v. Apfel, 225 F.3d 310, 317 (3d Cir. 2000)). This approach would have been consistent with the ALJ's duty to investigate the facts and develop the record, and such a clarification may have produced the substantial evidence needed to support the ALJ's decision.

Therefore, remand on this basis is necessary. I decline to address Snyder's other allegations of error, as remand may produce a different result on this claim, making discussion of them moot. Burns v. Colvin, 156 F. Supp. 3d 579, 598 (M.D. Pa. Jan. 13, 2016); see LaSalle v. Comm'r of Soc. Sec., Civ. No. 10-1096, 2011 WL 1456166, at *7 (W.D. Pa. Apr. 14, 2011).

## V. CONCLUSION

Based upon a review of the record, it is determined that the Commissioner's decision to deny Snyder's SSI claim under Title XVI is not supported by substantial evidence. Therefore, pursuant to 42 U.S.C. § 405(g), this Court will vacate the Commissioner of Social Security's decision and remand this case for further proceedings. An appropriate Order follows.

BY THE COURT:

s/ Matthew W. Brann
Matthew W. Brann
United States District Judge